# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **AUBRAY PUGH, OLIVIA, LEES, and CASSIDY ELLIOT,** | ) ) ) ) | |
| Plaintiffs, | ) ) | **Case No. 3:22-cv-00556** |
| v. | ) ) ) | **Judge Aleta A. Trauger** |
| **LADY JANE'S HAIRCUTS FOR MEN HOLDING COMPANY, LLC; LADY JANE'S MURFREESBORO TN, LLC; and LADY JANE'S NASHVILLE – COOL SPRINGS TN, LLC, MICHIGAN,** | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF VICTORIA FRANZ

I, Victoria Franz, declare and state as follows:

1.      My name is Victoria Franz.  I am the Director of Operations for Defendants Lady Jane's Haircuts for Men Holding Co., LLC, Lady Jane's Murfreesboro TN, LLC, and Lady Jane's Nashville – Cool Springs TN, LLC ("Lady Jane's").  As Director of Operations, I am familiar with the electronic records and practices of Lady Jane's.  This Declaration is based on personal knowledge and my review of Lady Jane's records maintained in the regular and ordinary course of business for Lady Jane's.

2.      I am over the age of 18 and competent to testify to the matters contained herein.

3.      Lady Jane's is one of the fastest growing men's grooming salons across the country. Currently, Lady Jane's operates and manages approximately 106 locations across 21 states.

4.      Lady Jane's hair stylists engage with the Company as independent contractors.

5.	To that end, each hair stylist executes an Independent Contractor Agreement with Lady Jane's prior to beginning work.  A corporate representative for Lady Jane's also signs each Independent Contractor Agreement on behalf of Lady Jane's.

6.	Plaintiffs Aubray Pugh, Olivia Lees, and Cassidy Elliot performed services as independent contractor hair stylists at two Lady Jane's salons in Middle Tennessee.  Pugh and Elliot performed services in the Murfreesboro, Tennessee location and Lees performed services at the Nashville – Cool Springs, Tennessee location.

7.	Aubray Pugh entered into the Independent Contractor Agreement on July 27, 2020.  A true and accurate copy of the Independent Contractor Agreement Aubray Pugh signed is attached hereto as **Exhibit 1**.  Pugh expressly consented electronically to the terms of the Independent Contractor Agreement on July 27, 2020 by signing her name to acknowledge that she read, understood, and agreed to abide by the terms of the Independent Contractor Agreement.   I electronically signed Pugh's Independent Contractor Agreement on behalf of Lady Jane's on July 28, 2020.  A true and accurate copy of the DocuSign Certificate of Completion relating to Pugh's Independent Contractor Agreement with Lady Jane's is attached hereto as **Exhibit 2**.

8.	Pugh performed services as a hair stylist for Lady Jane's from late-July 2020 until in or about June of 2022 when Lady Jane's terminated her Independent Contractor Agreement.

9.	Olivia Lees entered into the Independent Contractor Agreement on June 10, 2019.  A true and accurate copy of the Independent Contractor Agreement Olivia Lees signed is attached hereto as **Exhibit 3**.  Lees expressly consented electronically to the terms of the Independent Contractor Agreement on June 10, 2019 by signing her name to acknowledge that she read, understood, and agreed to abide by the terms of the Independent Contractor Agreement.  Samar Jarrous, Operations Manager, electronically signed Lees' Independent Contractor Agreement on

behalf of Lady Jane's on June 10, 2019. A true and accurate copy of the DocuSign Certificate of Completion relating to Lees' Independent Contractor Agreement with Lady Jane's is attached hereto as **Exhibit 4**.

10.     Lees performed services for Lady Jane's from early-June of 2019 until she voluntarily terminated her Independent Contractor Agreement in February of 2022.

11.     Cassidy Elliot entered into the Independent Contractor Agreement on August 6, 2018. A true and accurate copy of the Independent Contractor Agreement Cassidy Elliot signed is attached hereto as **Exhibit 5**. Elliot expressly consented electronically to the terms of the Independent Contractor Agreement on August 6, 2018 by signing her name to acknowledge that she read, understood, and agreed to abide by the terms of the Independent Contractor Agreement. Samar Jarrous signed Elliot's Independent Contractor Agreement on behalf of Lady Jane's on August 6, 2018. A true and accurate copy of the DocuSign Certificate of Completion relating to Elliot's Independent Contractor Agreement with Lady Jane's is attached hereto as **Exhibit 6**.

12.     Elliot performed services for Lady Jane's from early-August 2018 until she voluntarily terminated her Independent Contractor Agreement in February of 2022.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this 14th day of September, 2022.

_Victoria Franz_
Victoria Franz

# EXHIBIT 1

DocuSign Envelope ID: BE90C843-DF19-4BB0-B9A8-6B05C8771818



# INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") is between Lady Jane's Murfreesboro TN, LLC

[**NOTE: Insert LJ Entity name for store at issue (i.e., "Lady Jane's O'Fallon MO, LLC")**] (hereinafter "LJ") and
_____Aubray Pugh_____ (hereinafter "CONTRACTOR"). As is signified by this Agreement, CONTRACTOR desires to contract with and rent space from LJ to provide hairstyling services to CONTRACTOR's clientele in LJ's Murfreesboro, TN store. In consideration of the mutual promises made herein, and for other consideration, the parties agree as follows:

1. **INDEPENDENT CONTRACTOR.** LJ hereby engages CONTRACTOR as an independent contractor, and not as an employee, to conduct certain of CONTRACTOR's hairstyling services on the LJ premises in exchange for rental payments as described below. CONTRACTOR will determine the method, manner and means of performing CONTRACTOR's services. LJ shall provide no direction, control, or training to CONTRACTOR. As an independent contractor, CONTRACTOR is leasing space inside a LJ store and will be responsible for establishing work hours, making appointments, and otherwise conducting and controlling CONTRACTOR's services performed in that store. CONTRACTOR shall furnish all tools, equipment and supplies at CONTRACTOR's own expense and be responsible for any ongoing maintenance or replacement expenses

2. **LICENSING AND TAXES.** CONTRACTOR agrees to be responsible for the collection, payment and reporting of any and all taxes that may become due as a result of his or her business. CONTRACTOR agrees to acquire and maintain a valid professional license and/or an independent contractor's license as required by the laws of the State in which the store is located. If applicable law offers a managing stylist or barber license or similar license, CONTRACTOR shall acquire and maintain such license. CONTRACTOR is responsible to keep the contracted work space in a clean and sanitary manner.

3. **RENT. CONTRACTOR** will pay rent daily in the amount of _60_ % of the revenue collected by CONTRACTOR under this Agreement but daily rent paid by CONTRACTOR must total no less than one hundred fifty dollars for each month of this Agreement. If the daily rent for a specific month does not total at least one hundred fifty dollars, CONTRACTOR will pay LJ the difference on the first day of the next month. CONTRACTOR agrees to charge the minimum prices in the applicable LJ store, but may charge more in CONTRACTOR's sole discretion. Any future minimum price change must be agreed to by CONTRACTOR.

4. **PRODUCT AND CREDIT CARD TRANSACTIONS.** In addition to rent paid under Section 3 of this Agreement, CONTRACTOR shall pay LJ 86% of the posted price for all products owned by LJ and sold by CONTRACTOR in an LJ store. CONTRACTOR shall also pay LJ a fee of 3% for all credit card transactions utilizing LJ's credit card machine.

5. **INCLUDED IN RENT.** CONTRACTOR shall be provided a barber chair, station with mirror and shelf and a storage unit for tools. CONTRACTOR shall provide all other equipment. The building is open and accessible during stated building business hours. All building utilities shall be operational during stated building business hours. Should access at other times become necessary, the building manager will arrange for such access. The cost and use of all utilities, including the telephone, is included in CONTRACTOR's rent. The telephone system is for salon business only and shall not be used for personal calls. As part of rent paid, LJ will also provide advertising for salon within the local market.

6. **TERM AND TERMINATION OF AGREEMENT.** Either party may terminate this Agreement at any time by providing written notice to the other party. Otherwise, this Agreement continues on a month-to-month basis and may be modified accordingly by written agreement of the parties.

7. **RESPONSIBILITY FOR LOSSES.** CONTRACTOR understands that there is no guarantee of any revenue to CONTRACTOR under this Agreement. CONTRACTOR warrants that CONTRACTOR is not economically dependent upon this Agreement, advertises or holds himself or herself out as being in business, and is not prohibited from contracting with any other business during the term of this Agreement. LJ and LJ's representatives shall not be responsible for losses of any kind to the person or property of CONTRACTOR or CONTRACTOR's clientele. Accordingly, LJ recommends that CONTRACTOR obtain and maintain his or her own insurance to protect against CONTRACTOR's personal losses, including any professional liability insurance or worker's compensation or disability insurance coverage. CONTRACTOR understands that he or she may

1

DocuSign Envelope ID: BE90C843-DF19-4BB0-B9A8-6B05C8771818



suffer a loss during the term of this Agreement if CONTRACTOR's expenses, including the minimum rent due under this Agreement, exceed revenue received under this Agreement.

8. **GOVERNING LAW.** Except as provided under Section 11 of this Agreement, this Agreement shall be governed by the laws of the State of Michigan without reference to principles of conflict of laws.

9. **GENERAL.** No oral agreements have been entered into between the parties. This Agreement constitutes the entire agreement of the parties and supersedes any and all other agreements between the parties with respect to the matters addressed herein. This Agreement is binding upon the parties hereto and their respective heirs, successors and assigns. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

10. **NON-DISPARAGEMENT CLAUSE.** LJ and CONTRACTOR agree that during the term of this Agreement and at all times thereafter, they will not disparage each other in any way.

11. **ARBITRATION**. LJ and CONTRACTOR agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise or have arisen between CONTRACTOR and LJ and/or any current or former employee of LJ. The arbitration proceedings shall be administered by the American Arbitration Association under its Commercial Arbitration Rules ("Arbitration Rules") in effect at the time a demand for arbitration is made, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. If the American Arbitration Association is unwilling or unable to administer the arbitration, then an arbitrator agreed upon by the parties shall administer the arbitration in accordance with the Arbitration Rules. Subject to the Arbitration Rules, the arbitrator shall have the authority to allow for appropriate discovery and exchange of information before a hearing, including, but not limited to, production of documents, responses to information requests, depositions, and subpoenas. In reaching a decision, the arbitrator shall apply the substantive law that is applicable to the claims. The arbitrator shall also be bound by any applicable LJ handbooks, rules, policies and procedures. The arbitrator shall have no authority to add to, detract from, change, amend or modify this Agreement or any law, handbook, rule, policy or procedure in any respect. Nor shall the arbitrator have authority to consider or decide any matters that are the sole responsibility of LJ in the management and conduct of its business. The arbitrator shall have the power to award all remedies that could be awarded by a court or administrative agency under applicable statutory or common law. The arbitrator shall render a reasoned opinion and award in writing, finding facts and applying the applicable law, within 30 days after the close of the arbitration hearing, or at any later time to which the parties may agree, but failure of the arbitrator to meet this or any other deadline shall not affect the validity of the arbitration and award. A party may enter judgment upon the arbitrator's award in any court having jurisdiction. The award may be vacated or modified only on the grounds specified in the Federal Arbitration Act or other applicable law. The decision of the arbitrator, including determination of the amount of any damages suffered, shall be exclusive, final, and binding on the parties, their heirs, executors, administrators, successors and assigns. **The parties understand and agree that arbitration is the only forum for resolving Covered Claims, and that both parties are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration for Covered Claims.**

This Agreement covers and applies to any and all claims, whether arising before or after execution of this Agreement, relating to the CONTRACTOR's relationship with LJ or the termination of that relationship. For purposes of this Agreement, claims that relate to CONTRACTOR's relationship with LJ or the termination of that relationship, whether based in statute, common law, or otherwise, and that are not "Excluded Claims," shall be referred to as "Covered Claims." The Agreement covers and applies to any and all Covered Claims that could be asserted in court or before an administrative agency; any and all Covered Claims for which CONTRACTOR has a cause of action, including but not limited to claims for breach of contract or covenant (express or implied), wrongful discharge, retaliation, torts, or harassment or discrimination (including, but not limited to, claims for harassment or discrimination based on race, color, religion, sex, national origin, age, disability, military service member status, marital status, sexual orientation, sexual identity, or other characteristics protected by law), failure to pay wages, overtime, compensation, or other remuneration; any Covered Claims against the directors, officers, insurers, or employees of LJ or its affiliated entities; and any and all disputes concerning the arbitrability of any claim.

CONTRACTOR agrees that Covered Claims will be arbitrated only on an individual basis, and that both CONTRACTOR and LJ waive the right to participate in or to receive money or any other relief from any class, collective, or representative proceedings.

DocuSign Envelope ID: BE90C843-DF19-4BB0-B9A8-6B05C8771818



No party may bring a claim on behalf of other individuals, and any arbitrator hearing a Covered Claim may not: (i) combine more than one individual's claim or claims into a single case; (ii) participate in or facilitate notification of others of potential claims; or (iii) arbitrate any form of a class, collective, or representative proceeding. By signing this Agreement, the Parties waive any substantive or procedural rights they may have to bring an action on a class, collective, representative, or other similar basis against each other. Notwithstanding, if there is more than one Covered Claim between the parties, then all such Covered Claims shall be heard in a single proceeding. This Section 11 of the Agreement is made pursuant to and shall be governed under the Federal Arbitration Act.

**ENTERED INTO AND SIGNED THIS** 28 **DAY OF** July _____ **20** 20

_____
Signed By Contractor

_____
Signed By Corporate Director

# EXHIBIT 2



## Certificate Of Completion

Envelope Id: BE90C843DF194BB0B9A86B05C8771818
Subject: Please DocuSign: Aubray Najar
Source Envelope:
Document Pages: 4      Signatures: 3
Certificate Pages: 2      Initials: 0
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Status: Completed

Envelope Originator:
Lady Jane's Haircuts for Men
3921 rochester rd
Troy, MI 48083
stylistspaperwork@ljhaircuts.com
IP Address: 96.70.93.29

## Record Tracking

Status: Original
     7/27/2020 2:36:51 PM

Holder: Lady Jane's Haircuts for Men
     stylistspaperwork@ljhaircuts.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Victoria Franz<br>Vfranz@ladyjanes.com<br>Director Of Operations<br>Security Level: Email, Account Authentication (None) | *Victoria Franz*<br>4E77C09798BF043C...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 96.70.93.29 | Sent: 7/27/2020 2:37:57 PM<br>Viewed: 7/28/2020 10:32:17 AM<br>Signed: 7/28/2020 10:33:07 AM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |
| Aubray Pugh<br>Aubraynajar@gmail.com<br>Security Level: Email, Account Authentication (None) | *[signature]*<br>18BBCFAC0A51454...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 99.203.15.69<br>Signed using mobile | Sent: 7/27/2020 2:37:57 PM<br>Viewed: 7/27/2020 3:33:00 PM<br>Signed: 7/27/2020 3:34:55 PM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 7/27/2020 2:37:57 PM |
| Certified Delivered | Security Checked | 7/28/2020 10:32:17 AM |
| Signing Complete | Security Checked | 7/28/2020 10:33:07 AM |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Completed | Security Checked | 7/28/2020 10:33:07 AM |
| **Payment Events** | **Status** | **Timestamps** |

# EXHIBIT 3

DocuSign Envelope ID: D92E53A7-3146-4743-A8F1-0730C99C80D1



# LADY JANE'S
# HAIRCUTS FOR MEN

## INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") is between Lady Jane's NASHVILLE COOL SPRINGS TN LLC

[**NOTE:** Insert LJ Entity name for store at issue (i.e., "Lady Jane's O'Fallon MO, LLC")] (hereinafter "LJ") and _____ Olivia Lees _____ (hereinafter "CONTRACTOR"). As is signified by this Agreement, CONTRACTOR desires to contract with and rent space from LJ to provide hairstyling services to CONTRACTOR's clientele in LJ's COOL SPRINGS _____ store. In consideration of the mutual promises made herein, and for other consideration, the parties agree as follows:

1. **INDEPENDENT CONTRACTOR.** LJ hereby engages CONTRACTOR as an independent contractor, and not as an employee, to conduct certain of CONTRACTOR's hairstyling services on the LJ premises in exchange for rental payments as described below. CONTRACTOR will determine the method, manner and means of performing CONTRACTOR's services. LJ shall provide no direction, control, or training to CONTRACTOR. As an independent contractor, CONTRACTOR is leasing space inside a LJ store and will be responsible for establishing work hours, making appointments, and otherwise conducting and controlling CONTRACTOR's services performed in that store. CONTRACTOR shall furnish all tools, equipment and supplies at CONTRACTOR's own expense and be responsible for any ongoing maintenance or replacement expenses

2. **LICENSING AND TAXES.** CONTRACTOR agrees to be responsible for the collection, payment and reporting of any and all taxes that may become due as a result of his or her business. CONTRACTOR agrees to acquire and maintain a valid professional license and/or an independent contractor's license as required by the laws of the State in which the store is located. If applicable law offers a managing stylist or barber license or similar license, CONTRACTOR shall acquire and maintain such license. CONTRACTOR is responsible to keep the contracted work space in a clean and sanitary manner.

3. **RENT. CONTRACTOR** will pay rent daily in the amount of 60 % of the revenue collected by CONTRACTOR under this Agreement but daily rent paid by CONTRACTOR must total no less than one hundred fifty dollars for each month of this Agreement. If the daily rent for a specific month does not total at least one hundred fifty dollars, CONTRACTOR will pay LJ the difference on the first day of the next month. CONTRACTOR agrees to charge the minimum prices in the applicable LJ store, but may charge more in CONTRACTOR's sole discretion. Any future minimum price change must be agreed to by CONTRACTOR.

4. **PRODUCT AND CREDIT CARD TRANSACTIONS.** In addition to rent paid under Section 3 of this Agreement, CONTRACTOR shall pay LJ 86% of the posted price for all products owned by LJ and sold by CONTRACTOR in an LJ store. CONTRACTOR shall also pay LJ a fee of 3% for all credit card transactions utilizing LJ's credit card machine.

5. **INCLUDED IN RENT. CONTRACTOR** shall be provided a barber chair, station with mirror and shelf and a storage unit for tools. CONTRACTOR shall provide all other equipment. The building is open and accessible during stated building business hours. All building utilities shall be operational during stated building business hours. Should access at other times become necessary, the building manager will arrange for such access. The cost and use of all utilities, including the telephone, is included in CONTRACTOR's rent. The telephone system is for salon business only and shall not be used for personal calls. As part of rent paid, LJ will also provide advertising for salon within the local market.

6. **TERM AND TERMINATION OF AGREEMENT.** Either party may terminate this Agreement at any time by providing written notice to the other party. Otherwise, this Agreement continues on a month-to-month basis and may be modified accordingly by written agreement of the parties.

7. **RESPONSIBILITY FOR LOSSES.** CONTRACTOR understands that there is no guarantee of any revenue to CONTRACTOR under this Agreement. CONTRACTOR warrants that CONTRACTOR is not economically dependent upon this Agreement, advertises or holds himself or herself out as being in business, and is not prohibited from contracting with any other business during the term of this Agreement. LJ and LJ's representatives shall not be responsible for losses of any kind to the person or property of CONTRACTOR or CONTRACTOR's clientele. Accordingly, LJ recommends that CONTRACTOR obtain and maintain his or her own insurance to protect against CONTRACTOR's personal losses, including any professional liability insurance or worker's compensation or disability insurance coverage. CONTRACTOR understands that he or she may

1

DocuSign Envelope ID: D92E53A7-3146-4743-A8F1-0730C99C80D1



suffer a loss during the term of this Agreement if CONTRACTOR's expenses, including the minimum rent due under this Agreement, exceed revenue received under this Agreement.

**8. GOVERNING LAW.** Except as provided under Section 11 of this Agreement, this Agreement shall be governed by the laws of the State of Michigan without reference to principles of conflict of laws.

**9. GENERAL.** No oral agreements have been entered into between the parties. This Agreement constitutes the entire agreement of the parties and supersedes any and all other agreements between the parties with respect to the matters addressed herein. This Agreement is binding upon the parties hereto and their respective heirs, successors and assigns. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**10. NON-DISPARAGEMENT CLAUSE.** LJ and CONTRACTOR agree that during the term of this Agreement and at all times thereafter, they will not disparage each other in any way.

**11. ARBITRATION**. LJ and CONTRACTOR agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise or have arisen between CONTRACTOR and LJ and/or any current or former employee of LJ. The arbitration proceedings shall be administered by the American Arbitration Association under its Commercial Arbitration Rules ("Arbitration Rules") in effect at the time a demand for arbitration is made, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. If the American Arbitration Association is unwilling or unable to administer the arbitration, then an arbitrator agreed upon by the parties shall administer the arbitration in accordance with the Arbitration Rules. Subject to the Arbitration Rules, the arbitrator shall have the authority to allow for appropriate discovery and exchange of information before a hearing, including, but not limited to, production of documents, responses to information requests, depositions, and subpoenas. In reaching a decision, the arbitrator shall apply the substantive law that is applicable to the claims. The arbitrator shall also be bound by any applicable LJ handbooks, rules, policies and procedures. The arbitrator shall have no authority to add to, detract from, change, amend or modify this Agreement or any law, handbook, rule, policy or procedure in any respect. Nor shall the arbitrator have authority to consider or decide any matters that are the sole responsibility of LJ in the management and conduct of its business. The arbitrator shall have the power to award all remedies that could be awarded by a court or administrative agency under applicable statutory or common law. The arbitrator shall render a reasoned opinion and award in writing, finding facts and applying the applicable law, within 30 days after the close of the arbitration hearing, or at any later time to which the parties may agree, but failure of the arbitrator to meet this or any other deadline shall not affect the validity of the arbitration and award. A party may enter judgment upon the arbitrator's award in any court having jurisdiction. The award may be vacated or modified only on the grounds specified in the Federal Arbitration Act or other applicable law. The decision of the arbitrator, including determination of the amount of any damages suffered, shall be exclusive, final, and binding on the parties, their heirs, executors, administrators, successors and assigns. **The parties understand and agree that arbitration is the only forum for resolving Covered Claims, and that both parties are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration for Covered Claims.**

This Agreement covers and applies to any and all claims, whether arising before or after execution of this Agreement, relating to the CONTRACTOR's relationship with LJ or the termination of that relationship. For purposes of this Agreement, claims that relate to CONTRACTOR's relationship with LJ or the termination of that relationship, whether based in statute, common law, or otherwise, and that are not "Excluded Claims," shall be referred to as "Covered Claims." The Agreement covers and applies to any and all Covered Claims that could be asserted in court or before an administrative agency; any and all Covered Claims for which CONTRACTOR has a cause of action, including but not limited to claims for breach of contract or covenant (express or implied), wrongful discharge, retaliation, torts, or harassment or discrimination (including, but not limited to, claims for harassment or discrimination based on race, color, religion, sex, national origin, age, disability, military service member status, marital status, sexual orientation, sexual identity, or other characteristics protected by law), failure to pay wages, overtime, compensation, or other remuneration; any Covered Claims against the directors, officers, insurers, or employees of LJ or its affiliated entities; and any and all disputes concerning the arbitrability of any claim.

CONTRACTOR agrees that Covered Claims will be arbitrated only on an individual basis, and that both CONTRACTOR and LJ waive the right to participate in or to receive money or any other relief from any class, collective, or representative proceedings.



No party may bring a claim on behalf of other individuals, and any arbitrator hearing a Covered Claim may not: (i) combine more than one individual's claim or claims into a single case; (ii) participate in or facilitate notification of others of potential claims; or (iii) arbitrate any form of a class, collective, or representative proceeding. By signing this Agreement, the Parties waive any substantive or procedural rights they may have to bring an action on a class, collective, representative, or other similar basis against each other. Notwithstanding, if there is more than one Covered Claim between the parties, then all such Covered Claims shall be heard in a single proceeding. This Section 11 of the Agreement is made pursuant to and shall be governed under the Federal Arbitration Act.

**ENTERED INTO AND SIGNED THIS** 10TH **DAY OF** JUNE 20 19

DocuSigned by:

_____
Signed By Contractor

DocuSigned by:

Samar Jarrous

_____
Signed By Corporate Director

# EXHIBIT 4



## Certificate Of Completion

Envelope Id: D92E53A731464743A8F10730C99C80D1
Subject: Olivia Lees COOL SPRINGS
Source Envelope:
Document Pages: 4
Certificate Pages: 2
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 3
Initials: 0

Status: Completed

Envelope Originator:
Lady Jane's Haircuts for Men
3921 rochester rd
Troy, MI 48083
stylistspaperwork@ljhaircuts.com
IP Address: 96.70.93.29

## Record Tracking

Status: Original
          6/10/2019 1:57:09 PM

Holder: Lady Jane's Haircuts for Men
          stylistspaperwork@ljhaircuts.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Samar jarrous<br>sjarrous@ladyjanes.com<br>operations manager<br>Security Level: Email, Account Authentication (None) | Samar Jarrous<br>5992F04522524D8...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 96.70.93.29 | Sent: 6/10/2019 1:58:02 PM<br>Viewed: 6/10/2019 2:17:21 PM<br>Signed: 6/10/2019 2:17:56 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |
| Olivia Lees<br>oliviaindy13@yahoo.com<br>Security Level: Email, Account Authentication (None) | Olivia Lees<br>99C2EDFDE8E3465...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 71.228.166.104<br>Signed using mobile | Sent: 6/10/2019 1:58:02 PM<br>Viewed: 6/10/2019 7:54:21 PM<br>Signed: 6/10/2019 8:00:26 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 6/10/2019 1:58:03 PM |
| Certified Delivered | Security Checked | 6/10/2019 7:54:21 PM |
| Signing Complete | Security Checked | 6/10/2019 8:00:26 PM |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Completed | Security Checked | 6/10/2019 8:00:26 PM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

# EXHIBIT 5

DocuSign Envelope ID: 962A1119-9105-4D39-9409-E38A913AF710



# INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") is between Lady Jane's Murfreesboro TN LLC _____

[**NOTE: Insert LJ Entity name for store at issue (i.e., "Lady Jane's of O'Fallon MO, LLC")**] (hereinafter "LJ") and
_____ Cassidy Elliot _____ (hereinafter "CONTRACTOR"). As is signified by this Agreement, CONTRACTOR desires to contract with and rent space from LJ to provide hairstyling services to CONTRACTOR's clientele in LJ's Murfreesboro _____ store. In consideration of the mutual promises made herein, and for other consideration, the parties agree as follows:

1. **INDEPENDENT CONTRACTOR.** LJ hereby engages CONTRACTOR as an independent contractor, and not as an employee, to conduct certain of CONTRACTOR's hairstyling services on the LJ premises in exchange for rental payments as described below. CONTRACTOR will determine the method, manner and means of performing CONTRACTOR's services. LJ shall provide no direction, control, or training to CONTRACTOR. As an independent contractor, CONTRACTOR is leasing space inside a LJ store and will be responsible for establishing work hours, making appointments, and otherwise conducting and controlling CONTRACTOR's services performed in that store. CONTRACTOR shall furnish all tools, equipment and supplies at CONTRACTOR's own expense and be responsible for any ongoing maintenance or replacement expenses

2. **LICENSING AND TAXES.** CONTRACTOR agrees to be responsible for the collection, payment and reporting of any and all taxes that may become due as a result of his or her business. CONTRACTOR agrees to acquire and maintain a valid professional license and/or an independent contractor's license as required by the laws of the State in which the store is located. If applicable law offers a managing stylist or barber license or similar license, CONTRACTOR shall acquire and maintain such license. CONTRACTOR is responsible to keep the contracted work space in a clean and sanitary manner.

3. **RENT.** CONTRACTOR will pay rent daily in the amount of 60% of the revenue collected by CONTRACTOR under this Agreement but daily rent paid by CONTRACTOR must total no less than one hundred fifty dollars for each month of this Agreement. If the daily rent for a specific month does not total at least one hundred fifty dollars, CONTRACTOR will pay LJ the difference on the first day of the next month. CONTRACTOR agrees to charge the minimum prices in the applicable LJ store, but may charge more in CONTRACTOR's sole discretion. Any future minimum price change must be agreed to by CONTRACTOR.

4. **PRODUCT AND CREDIT CARD TRANSACTIONS.** In addition to rent paid under Section 3 of this Agreement, CONTRACTOR shall pay LJ 86% of the posted price for all products owned by LJ and sold by CONTRACTOR in an LJ store. CONTRACTOR shall also pay LJ a fee of 3% for all credit card transactions utilizing LJ's credit card machine.

5. **INCLUDED IN RENT.** CONTRACTOR shall be provided a barber chair, station with mirror and shelf and a storage unit for tools. CONTRACTOR shall provide all other equipment. The building is open and accessible during stated building business hours. All building utilities shall be operational during stated building business hours. Should access at other times become necessary, the building manager will arrange for such access. The cost and use of all utilities, including the telephone, is included in CONTRACTOR's rent. The telephone system is for salon business only and shall not be used for personal calls. As part of rent paid, LJ will also provide advertising for salon within the local market.

6. **TERM AND TERMINATION OF AGREEMENT.** Either party may terminate this Agreement at any time by providing written notice to the other party. Otherwise, this Agreement continues on a month-to-month basis and may be modified accordingly by written agreement of the parties.

7. **RESPONSIBILITY FOR LOSSES.** CONTRACTOR understands that there is no guarantee of any revenue to CONTRACTOR under this Agreement. CONTRACTOR warrants that CONTRACTOR is not economically dependent upon this Agreement, advertises or holds himself or herself out as being in business, and is not prohibited from contracting with any other business during the term of this Agreement. LJ and LJ's representatives shall not be responsible for losses of any kind to the person or property of CONTRACTOR or CONTRACTOR's clientele. Accordingly, LJ recommends that CONTRACTOR obtain and maintain his or her own insurance to protect against CONTRACTOR's personal losses, including any professional liability insurance or worker's compensation or disability insurance coverage. CONTRACTOR understands that he or she may

1



suffer a loss during the term of this Agreement if CONTRACTOR's expenses, including the minimum rent due under this Agreement, exceed revenue received under this Agreement.

8. **GOVERNING LAW.** Except as provided under Section 11 of this Agreement, this Agreement shall be governed by the laws of the State of Michigan without reference to principles of conflict of laws.

9. **GENERAL.** No oral agreements have been entered into between the parties. This Agreement constitutes the entire agreement of the parties and supersedes any and all other agreements between the parties with respect to the matters addressed herein. This Agreement is binding upon the parties hereto and their respective heirs, successors and assigns. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

10. **NON-DISPARAGEMENT CLAUSE.** LJ and CONTRACTOR agree that during the term of this Agreement and at all times thereafter, they will not disparage each other in any way.

11. **ARBITRATION**. LJ and CONTRACTOR agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise or have arisen between CONTRACTOR and LJ and/or any current or former employee of LJ. The arbitration proceedings shall be administered by the American Arbitration Association under its Commercial Arbitration Rules ("Arbitration Rules") in effect at the time a demand for arbitration is made, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. If the American Arbitration Association is unwilling or unable to administer the arbitration, then an arbitrator agreed upon by the parties shall administer the arbitration in accordance with the Arbitration Rules. Subject to the Arbitration Rules, the arbitrator shall have the authority to allow for appropriate discovery and exchange of information before a hearing, including, but not limited to, production of documents, responses to information requests, depositions, and subpoenas. In reaching a decision, the arbitrator shall apply the substantive law that is applicable to the claims. The arbitrator shall also be bound by any applicable LJ handbooks, rules, policies and procedures. The arbitrator shall have no authority to add to, detract from, change, amend or modify this Agreement or any law, handbook, rule, policy or procedure in any respect. Nor shall the arbitrator have authority to consider or decide any matters that are the sole responsibility of LJ in the management and conduct of its business. The arbitrator shall have the power to award all remedies that could be awarded by a court or administrative agency under applicable statutory or common law. The arbitrator shall render a reasoned opinion and award in writing, finding facts and applying the applicable law, within 30 days after the close of the arbitration hearing, or at any later time to which the parties may agree, but failure of the arbitrator to meet this or any other deadline shall not affect the validity of the arbitration and award. A party may enter judgment upon the arbitrator's award in any court having jurisdiction. The award may be vacated or modified only on the grounds specified in the Federal Arbitration Act or other applicable law. The decision of the arbitrator, including determination of the amount of any damages suffered, shall be exclusive, final, and binding on the parties, their heirs, executors, administrators, successors and assigns. **The parties understand and agree that arbitration is the only forum for resolving Covered Claims, and that both parties are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration for Covered Claims.**

This Agreement covers and applies to any and all claims, whether arising before or after execution of this Agreement, relating to the CONTRACTOR's relationship with LJ or the termination of that relationship. For purposes of this Agreement, claims that relate to CONTRACTOR's relationship with LJ or the termination of that relationship, whether based in statute, common law, or otherwise, and that are not "Excluded Claims," shall be referred to as "Covered Claims." The Agreement covers and applies to any and all Covered Claims that could be asserted in court or before an administrative agency; any and all Covered Claims for which CONTRACTOR has a cause of action, including but not limited to claims for breach of contract or covenant (express or implied), wrongful discharge, retaliation, torts, or harassment or discrimination (including, but not limited to, claims for harassment or discrimination based on race, color, religion, sex, national origin, age, disability, military service member status, marital status, sexual orientation, sexual identity, or other characteristics protected by law), failure to pay wages, overtime, compensation, or other remuneration; any Covered Claims against the directors, officers, insurers, or employees of LJ or its affiliated entities; and any and all disputes concerning the arbitrability of any claim.

CONTRACTOR agrees that Covered Claims will be arbitrated only on an individual basis, and that both CONTRACTOR and LJ waive the right to participate in or to receive money or any other relief from any class, collective, or representative proceedings.



No party may bring a claim on behalf of other individuals, and any arbitrator hearing a Covered Claim may not: (i) combine more than one individual's claim or claims into a single case; (ii) participate in or facilitate notification of others of potential claims; or (iii) arbitrate any form of a class, collective, or representative proceeding. By signing this Agreement, the Parties waive any substantive or procedural rights they may have to bring an action on a class, collective, representative, or other similar basis against each other. Notwithstanding, if there is more than one Covered Claim between the parties, then all such Covered Claims shall be heard in a single proceeding. This Section 11 of the Agreement is made pursuant to and shall be governed under the Federal Arbitration Act.

**ENTERED INTO AND SIGNED THIS** 6th **DAY OF** August **2018**

_____        _____
Signed By Contractor                     Signed By Corporate Director

# EXHIBIT 6



## Certificate Of Completion

Envelope Id: 962A111991054D399409E38A913AF710      Status: Completed
Subject: DocuSign Cassidy Elliot
Source Envelope:
Document Pages: 4      Signatures: 3      Envelope Originator:
Certificate Pages: 2      Initials: 0      Lady Jane's Haircuts for Men
AutoNav: Enabled      3921 rochester rd
EnvelopeId Stamping: Enabled      Troy, MI 48083
Time Zone: (UTC-08:00) Pacific Time (US & Canada)      stylistspaperwork@ljhaircuts.com
IP Address: 96.70.93.29

## Record Tracking

Status: Original      Holder: Lady Jane's Haircuts for Men      Location: DocuSign
     8/3/2018 2:40:09 PM      stylistspaperwork@ljhaircuts.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| samar jarrous<br>sjarrous@ladyjanes.com<br>Security Level: Email, Account Authentication (None) | *samar jarrous*<br>DocuSigned by:<br>5992F04522524D8... <br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 96.70.93.29 | Sent: 8/3/2018 2:41:19 PM<br>Viewed: 8/3/2018 2:42:06 PM<br>Signed: 8/6/2018 11:37:18 AM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |
| Cassidy Elliot<br>tnmurfreesboro@ljstores.com<br>Security Level: Email, Account Authentication (None) | *Cassidy Elliott*<br>DocuSigned by:<br>8F71871130C7481...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 96.69.113.106<br>Signed using mobile | Sent: 8/3/2018 2:41:19 PM<br>Viewed: 8/6/2018 7:48:26 AM<br>Signed: 8/6/2018 7:51:44 AM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/3/2018 2:41:19 PM |
| Certified Delivered | Security Checked | 8/6/2018 7:48:26 AM |
| Signing Complete | Security Checked | 8/6/2018 11:37:18 AM |
| Completed | Security Checked | 8/6/2018 11:37:18 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |